# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VARKENO DELORENZO WHITE, individually and on behalf of all others similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>BUSINESS INFORMATION GROUP, INC., )<br><br>Defendant. | Case No. 2:19-cv-3750-JS<br><br>**FIRST AMENDED COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

COMES NOW Plaintiff, Varkeno DeLorenzo White ("Plaintiff"), by counsel, and files this First Amended Class Action Complaint against Defendant Business Information Group, Inc. ("Defendant" or "BIG").  Plaintiff alleges as follows:

## PRELIMINARY STATEMENT

1.      Credit reporting agencies play a significant role in the employment context, and inaccurate information in an individual's credit file can have a devastating impact on his or her employment opportunities.  *See Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414 (4th Cir. 2001).

2.      As Representative Sullivan remarked while contemplating the enactment of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), "with the trend toward...the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal 'blips' and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable." *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 632 (E.D. Va. 2016) (quoting 116 Cong. Rec. 36570 (1970)).

3.      Congress responded to concerns about abuses in the credit reporting industry with the FCRA, which protects consumers against dissemination of inaccurate information.  *Id.*

4.      "With the advent of . . . 'computerized data banks,' Congress 'found that in too many instances agencies were reporting inaccurate information that was adversely affecting the ability of individuals to obtain employment.'" *Id.*

5.      One of the biggest concerns with the credit reporting industry was the secrecy surrounding the contents of consumer reports.  *See* Elwin Griffith, *The Quest for Fair Credit Reporting & Equal Credit Opportunity in Consumer Transactions*, 25 U. Mem. L. Rev. 37, 37-

38 (1994); *see also Thomas*, 193 F. Supp. 3d at 632-33.  Thus, consumers were unable to even determine whether they were being damaged by adverse information in a credit report.

6.     Congress emphasized that "the consumer has a <u>right to know</u> when he is being turned down for credit, insurance, or employment because of adverse information in a credit report <u>and to correct</u> any erroneous information in his credit file."  *Thomas*, 193 F. Supp. 3d at 633 (quoting S. Rep. No. 517, 91st Cong., 1st Sess. 3).   Therefore, Congress wished to "'establish[ ] the <u>right of a consumer to be informed</u> of investigations into his personal life' <u>and to 'be told</u> the name of the agency making the report" whenever the individual 'is rejected for credit, insurance or employment because of an adverse credit report[.]'"  *Id.*

7.     In this case, Plaintiff was denied employment because of inaccurate information that BIG erroneously published in his consumer report.

8.     State Farm, Plaintiff's prospective employer, received a copy of the BIG report, but failed to provide Plaintiff with a copy of the report in sufficient time for him to challenge or explain its contents.

9.     Accordingly, Plaintiff brings claims, on behalf of himself and a class of similarly situated individuals, against BIG for violating §1681e(b) of the FCRA, which requires credit reporting agencies to follow reasonable procedures to assure maximum possible accuracy when furnishing credit reports.  Plaintiff also alleges a claim, on behalf of himself and a class of similarly situated individuals, against BIG for violating §1681k of the FCRA by failing to maintain strict procedures to insure that the derogatory public record information about him and class members was complete and up to date.

<u>**JURISDICTION**</u>

10.     This  case  was  originally  filed  in  the  Court  of  Common  Pleas  of  the

Commonwealth in Philadelphia County.

11.     On August 20, 2019, Defendant removed this action to this Court asserting that jurisdiction was appropriate under 28 U.S.C. § 1331 and the Class Action Fairness Act.

12.     The Court has personal jurisdiction over Defendant because it has its headquarters in this jurisdiction and because the claims in this case arise out of or relate to Defendant's contacts with Pennsylvania.

13.     Venue in this Court is proper under 28 U.S.C. § 1446(a) and 28 U.S.C. § 1391 because Defendant resides in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

14.     Plaintiff is a natural person, and at all times relevant to this Complaint was a "consumer" as defined by the FCRA, at 15 U.S.C. § 1681a.

15.     Defendant is a Delaware corporation that at all times relevant to the Complaint was doing business in the Commonwealth of Pennsylvania, and has a principal place of business located at 251 Veterans Way, Warminster, Pennsylvania.

16.     Among other things, Defendant sells background checks and credit reports to employers for their use in deciding whether to offer employment to prospective employees. These reports are provided in connection with a business transaction initiated by the employer.

17.     BIG is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## STATEMENT OF FACTS

### *BIG's Reporting of Inaccurate and*
### *Incomplete Information Concerning Plaintiff*

18.     In May 2017, Plaintiff applied for employment with New York Life Insurance Company ("New York Life").

19.     As a part of the application process, BIG prepared a consumer report on Plaintiff and provided it to New York Life on or about July 3, 2017.

20.     In Plaintiff's consumer report, BIG provided New York Life with inaccurate information regarding Plaintiff, which made it more difficult for him to obtain employment with New York Life.

21.     The report indicated that, in 1997, Plaintiff was charged with misconduct involving a controlled substance.

22.     However, BIG's report did not include the critical information that on October 17, 2002, Plaintiff's judgment of conviction had been set aside and the case against Plaintiff was discharged without imposition of sentence.

23.     This was not the only time BIG would publish inaccurate and incomplete information about Plaintiff's 22-year old misdemeanor criminal history.

24.     In January 2018, Plaintiff applied for a position with State Farm Insurance.

25.     On or about January 12, 2018, BIG again reported the same derogatory information concerning Plaintiff's case from 1997.  Again, Defendant BIG's report failed to indicate that on October 17, 2002, Plaintiff's judgment of conviction had been set aside and the case against Plaintiff was discharged without imposition of sentence.

26.     On or about January 12, 2018, BIG sent a report regarding Plaintiff's Alaska criminal history to State Farm.

5

27.    On or about January 12, 2018, BIG also sent a report regarding Plaintiff's Alaska criminal history to Doug McCann, a State Farm insurance agent.

28.    On or about January 15, 2018, BIG sent Plaintiff a letter on behalf of State Farm.

29.    BIG's January 15, 2018 letter informed Plaintiff that the report BIG prepared about Plaintiff might affect State Farm's decision to enter into a Licensed Staff Agreement with him.

30.    BIG's January 15, 2018 letter included a copy of a report BIG prepared about Plaintiff.

31.    On or about January 19, 2018, BIG sent Plaintiff a second letter on behalf of State Farm.

32.    BIG's January 19, 2018 letter on behalf of State Farm indicated that Plaintiff would not receive any further consideration for the position for which he applied.

33.    BIG's January 19, 2018 letter further stated that the decision not to hire Plaintiff was "influenced by information contained in a consumer report…conducted (sic) by [BIG]."

34.    Plaintiff disputed the contents of BIG's report and BIG eventually removed all information about Plaintiff's criminal background from his report.

35.    However, BIG's initial report resulted in Plaintiff losing the job opportunity with State Farm.

36.    In addition to preventing Plaintiff from obtaining employment with State Farm, BIG's conduct also caused Plaintiff other concrete and particularized harm, including loss of housing and the incurring of emotional distress, including embarrassment, humiliation, aggravation, and stress associated with the publication of the inaccurate information and the stress on his familial relationships as a result of his inability to obtain employment.

### The Pervasive Use of Inaccurate Criminal
### Background Reports for Employment Decisions

37.     Unfortunately, Plaintiff's misfortune is not uncommon.  The criminal background screening industry exercises staggering power in hiring decisions.  Approximately ninety-three percent of employers procure background checks on employees and job applicants.[1]

38.     There are hundreds, if not thousands, of criminal background screening companies, and it is a $2 billion a year industry.[2]  Unlike traditional credit reporting, which is dominated by the Big Three credit reporting agencies (Trans Union, Experian, and Equifax), it is nearly impossible for a consumer to verify that his or her criminal background check will be accurate in advance of the report being furnished to an employer because of the numerous different background screening companies.  Thus, consumers are routinely denied jobs on the basis of erroneous or inaccurate criminal history reports.

39.     Beyond the risks raised by the sheer volume of the information and players involved in the industry, the manner in which many companies prepare criminal history reports increases the risk of inaccuracies.  Companies often purchase criminal data in bulk and in static form, or access databases that are infrequently updated.  Online background check companies sell criminal history reports that contain information that is not current or accurate—arrests that result in dismissal, felony charges that are reduced to misdemeanor convictions.  Moreover, few public record sources that are easily accessible provide all personal identifiers for the person associated with a record (*e.g.*, date of birth, social security number, or middle name) which

---

[1] *See* National Consumer Law Center, *Broken Records: How Errors by Criminal Background Checking Companies Harm Workers and Businesses* (April 2012), available at http://www.nclc.org/images/pdf/pr-reprts/broken-records-report.pdf.

[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot* (April 2014), *available at* http://www.ibisworld.com/industry/background-check-services.html.

causes records to be matched with the wrong consumer.  Background check companies often report these mismatched, inaccurate, or incomplete records without any further corroboration or investigation, and often the companies never consult or obtain the original court record. [3]

### BIG's Lack of Procedures to Assure
### the Maximum Possible Accuracy of its Reporting

40.    BIG is no exception to these industrywide abuses.  For example, there have recently been several cases brought against BIG for publishing inaccurate and/or incomplete public records and criminal information about consumers who suffered adverse employment actions.  *See, e.g.*, *Verkuilen v. Bus. Info. Grp., Inc.*, No. 14-CV-00400 (E.D. Wis. filed April 2014); *Stockmeier v. HCTEC, LLC*, No. 8:18-cv-01362-EAK-TGW (M.D. Flor. filed June 2018); *Mouaha-Bell v. Bus. Info. Grp., Inc.*, No. 3:17-cv-00593-HEH (E.D. Va. filed August 2017); *Ellis v. Bus. Info. Grp., Inc.*, No. 2:16-cv-00970-JHE (N.D. Ala. filed June 2016); *Haws v. Bus. Info. Grp., Inc.*, No. 2:15-cv-05458-WB (E.D. Pa. filed October 2015); *Johnson* v. *Bus. Info. Grp., Inc.*, No. 2:19-cv-01713-GEKP (E.D. Pa. filed April 19, 2019); *Kelly v. Bus. Info. Grp., Inc.*, No. 2:15-cv-06668-DS (E.D. Pa. filed December 2015).

41.    The reports sold by BIG concerning Plaintiff contained derogatory and inaccurate information erroneously attributed to Plaintiff, including that he had criminal convictions when in fact those convictions had been set aside.

42.    The derogatory and inaccurate information that was in Plaintiff's consumer report was likely to have an adverse effect on Plaintiff's ability to obtain employment.

43.    The incorrect reporting was caused in part by BIG's failure to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports and

---

[3] *See generally* Nat'l Consumer Law Ctr., *Broken Records*, *supra*, at 21-23.

consumer files it publishes and maintains concerning Plaintiff.

44.    BIG does not have sufficient procedures to assure the maximum possible accuracy of the credit reports it furnishes regarding consumers.

45.    Specifically, BIG does not employ qualified professionals to check the complete underlying records at the courthouse immediately prior to publishing a report.  Instead BIG relies on a combination of online records, records purchased through bulk data purchases, and the use of vendors with inadequate training to review court records.  This uniform failure to use qualified individuals to check the actual complete court record immediately prior to publication of a consumer report results in reports that are inaccurate, incomplete, and out-of-date.

46.    Additionally, BIG does not have in place, and did not follow as to Plaintiff, any procedure reasonably calculated to ensure that BIG furnished the correct and truthful status of its public records.  Specifically, the criminal conviction BIG included in its reports was actually showing in the Alaska court records as discharged and set aside.

### BIG's Lack of Procedures to Assure
### its Public Record Information is Updated

47.    BIG does not maintain procedures designed to ensure public record information that is likely to have an adverse effect on a consumer's ability to obtain employment is complete and up to date.

48.    In the context of 15 U.S.C. § 1681k(a)(2), "complete and up to date" refers to a consumer report that contains information that represents the full material components of the actual public record.

49.    Here, BIG reported that Plaintiff had criminal background in his record but failed to indicate that his sentence was given a suspended imposition of sentence and that his conviction was subsequently discharged and set aside.

50.    BIG was on notice that Plaintiff's conviction would likely have been set aside. The fact that BIG's report indicated that Plaintiff had received a suspended sentence in 1997 should have caused BIG to procure a copy of Plaintiff's up to date record at the courthouse, as under Alaska law, the entire purpose of suspending the imposition of a criminal defendant's sentence is to enable the court to set aside and discharge the conviction after the criminal defendant complies with conditions set by the court.  *See* A.S. 12.55.085.

51.    Yet, in spite of the fact that BIG should have realized Plaintiff's sentence would have changed in the 21 years that had passed since the court suspended imposition of his sentence, BIG failed to obtain or comprehend the complete online court records.  This is evidenced by the fact that when BIG responded to Plaintiff's request for his file, no original court documents, screenshots, or other documentation from the Alaska court system was included in Defendant's response.

52.    At all times pertinent to this Complaint, BIG's conduct was willful and carried out in reckless disregard for Plaintiff's rights under the FCRA.  By example only and without limitation, Defendant's conduct is willful because it was intentionally accomplished through its intended procedures; these procedures have continued despite the fact that BIG and other consumer reporting agencies have been subject to court decisions critical of similar conduct; and BIG will continue to engage in this conduct because it believes that there is greater economic value in hiding information from consumers, as well as collecting and reporting derogatory public record information than updating consumers' reports with information that would fully cancel or render the previous reporting of the public record irrelevant.

## **CLASS ACTION ALLEGATIONS**

53.    Plaintiff incorporates by reference all preceding paragraphs as alleged above.

54.     Plaintiff brings Count I pursuant to Fed. R. Civ. P. 23(b)(3) on behalf of the

**§1681e(b) Class** defined as follows:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a) who were the subject of consumer report furnished by Defendant to a third party, (b) that was furnished for an employment purpose, (c) that contained at least one criminal record, (d) on or after the date two (2) years preceding the filing of the original Complaint, (e) wherein the actual courthouse or clerk's file for that record showed that the sentence or judgment had been expunged, set aside, discharged, amended, or otherwise updated at least thirty (30) days before the consumer report was furnished, (f) who disputed BIG's reporting of the sentence or judgment, and (g) where BIG changed the reporting of the sentence or judgment after the consumer's dispute.

> Excluded from the Class are all attorneys in the case, employees of any Defendant, any judge responsible for the case, and the judge's staff and immediate family.

55.     Plaintiff brings Count II pursuant to Fed. R. Civ. P. 23(b)(3) on behalf of the

**§1681k Class** defined as follows:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a) who were the subject of consumer report furnished by Defendant to a third party, (b) that was furnished for an employment purpose, (c) that contained at least one criminal record, (d) on or after the date two (2) years preceding the filing of the original Complaint, (e) wherein the actual courthouse or clerk's file for that record showed that the sentence or judgment had been expunged, set aside, discharged, amended, or otherwise updated at least thirty (30) days before the consumer report was furnished, (f) who disputed BIG's reporting of the sentence or judgment, (g) where BIG changed the reporting of the sentence or judgment after the consumer's dispute, and (h) to whom Defendant did not place in the United States mail postage pre-paid, on the day it furnished any part of the report containing the public record, a written notice that it was furnishing the subject report and containing the name of the person that was to receive the report.

> Excluded from the Class are all attorneys in the case, employees of any Defendant, any judge responsible for the case, and the judge's staff and immediate family.

56.     **Numerosity and Ascertainability.**   The class members are so numerous that

joinder of all is impractical.  Given the volume of BIG's business, hundreds, if not thousands, of consumers fall within the defined Classes.  BIG maintains a database of all consumer reports it has furnished.  BIG also maintains a database containing consumer disputes and the underlying documentation submitted by consumers in connection with such disputes.  BIG also maintains records showing whether and how it amended its original reports in response to consumer disputes.  Class members can be identified by filtering such databases by the parameters outlined in the class definitions.  In particular, class members, like Plaintiff, can be identified based on the nature of their dispute, and based on the fact that BIG subsequently amended their reports.

57.    Existence and Predominance of Common Questions of Law and Fact.  Common questions of law and fact exist as to all members of the Classes, and predominate over the questions affecting only individual members.  The common legal and factual questions include, among others:

(a)  Whether BIG uses reasonable procedures to ensure maximum possible accuracy in reporting criminal background information;

(b)  Whether BIG's failure to use qualified personnel to obtain and review appropriate court records is a reasonable procedure to assure maximum possible accuracy;

(c)  Whether BIG maintains strict procedures designed to ensure public record information that is likely to have an adverse effect on a consumer's ability to obtain employment is complete and up to date;

(d)  Whether BIG's failure to use qualified personnel to obtain and review appropriate court records is a strict procedure to ensure that its reports are complete and up-to-date;

(e)  Whether BIG's conduct violated the FCRA;

(f)  Whether BIG's violations of the FCRA were willful;

(g)  The proper measure of damages; and

(h)  The proper measure of punitive damages.

58.    Typicality.  Plaintiff's claims are typical of the claims of each class member, which all arise from the same operative facts and are based on the same legal theories.  Plaintiff, as every putative class member, alleges violations of the same FCRA provisions, 15 U.S.C. §§ 1681e(b), 1681k.  These claims challenge the reporting procedures of BIG and do not depend on any individualized facts.    BIG maintains the same procedures when reporting criminal background information.  In addition, Plaintiff is entitled to the relief under the same causes of action as the other members of the Classes.

59.    Adequacy.  Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has retained counsel experienced in handling actions involving unlawful practices against consumers, and class actions.  Neither Plaintiff nor his counsel have any interests that might cause them not to vigorously pursue this action.  Plaintiff is aware of his responsibilities to the putative Classes and has accepted such.

60.    Predominance and Superiority.  Questions of law and fact common to the class members predominate over questions affecting only individual class members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Defendant's conduct described in the Complaint stems from common and uniform practices, resulting in common violations of the FCRA.  Members of the Classes do not have an interest in pursuing separate actions against BIG, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution.  Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments

concerning BIG's practices.  Moreover, management of this action as a class action will not likely present any difficulties.  In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

61.    This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Classes, as well as a risk of adjudications with respect to individual members which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudications or substantially impair or impeded their ability to protect their interests.

**CAUSES OF ACTION**

**COUNT I**
**Violation of 15 U.S.C. § 1681e(b)**
**(On Behalf of Plaintiff and the §1681e(b) Class)**

62.    Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

63.    As alleged herein, BIG published inaccurate information regarding Plaintiff by publishing that he had been convicted of crimes; when in fact, the convictions were discharged and had been set aside.

64.    BIG violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports and credit files it published and maintained concerning Plaintiff and §1681e(b) Class members.

65.    As a result of BIG's conduct, action, and inaction, Plaintiff was denied employment opportunities.  Additionally, Plaintiff suffered actual damages, including but not

limited to: damage to his reputation, damage to credit rating, lost opportunities to enter into consumer credit transactions, denial of credit, damage to his personal relationships, and other emotional distress including aggravation, inconvenience, embarrassment, and frustration.

66.    Based upon information and belief, BIG's failure to follow reasonable procedures to assure maximum possible accuracy is a part of a systematic failure to comply with its obligations under 15 U.S.C. § 1681e(b).

67.    BIG's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

68.    Plaintiff and the §1681e(b) Class members are entitled to recover statutory damages, punitive damages, costs, and attorney's fees from BIG in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

## COUNT II
### Violation of 15 U.S.C. § 1681k
### (On Behalf of Plaintiff and the §1681k Class)

69.    Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

70.    As alleged herein, BIG failed to publish complete and up-to-date information regarding Plaintiff by instead publishing that he had been convicted of crimes without also indicating that the convictions had been subsequently set aside or discharged.

71.    As a result of BIG's conduct, action, and inaction, Plaintiff was denied employment opportunities.  Additionally, Plaintiff suffered actual damages, including but not limited to: damage to his reputation, damage to credit rating, lost opportunities to enter into consumer credit transactions, denial of credit, damage to his personal relationships, and other

emotional distress including aggravation, inconvenience, embarrassment, and frustration.

72.     Based upon information and belief, BIG's failure to maintain procedures to ensure public record information it reports is complete and up to date is part of a systematic failure to comply with its obligations under 15 U.S.C. § 1681k.

73.     BIG's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

74.     Plaintiff and the §1681k Class members are entitled to recover statutory damages, punitive damages, costs, and attorney's fees from BIG in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the class members, prays for relief as follows:

A.     An order certifying the case as a class action on behalf of the proposed Classes under Fed. R. Civ P. 23 appointing Plaintiff and his counsel to represent the same;

B.     An award of actual, statutory, and punitive damages for Plaintiff and the Classes;

C.     An award of pre-judgment and post-judgment interest as provided by law;

D.     An award of attorneys' fees and costs; and

E.     Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests and demands a trial by jury.

Date: December 3, 2019                    /s/E. Michelle Drake

                                         E. Michelle Drake (pro hac vice)
                                         John G. Albanese (pro hac vice)
                                         BERGER MONTAGUE PC
                                         43 SE Main Street, Suite 505
                                         Minneapolis, MN 55414
                                         T. 612.594.5999
                                         F. 612.584.4470
                                         emdrake@bm.net
                                         jalbanese@bm.net

                                         Shanon J. Carson, Bar No. 85957
                                         BERGER MONTAGUE PC
                                         1818 Market Street, Suite 3600
                                         Philadelphia, PA 19103
                                         T. 215.875.3000
                                         F. 215.875.4604
                                         scarson@bm.net

                                         Kristi C. Kelly (pro hac vice)
                                         KELLY GUZZO, PLC
                                         3925 Chain Bridge Rd., Suite 202
                                         Fairfax, VA 22030
                                         T. 703.424.7572
                                         kkelly@kellyguzzo.com

                                         *Attorneys for Plaintiff*